# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DEBORAH BEVELLE,**

    **Plaintiff,**    **CIVIL ACTION NO. 07-CV-14136**

  **vs.**       **DISTRICT JUDGE ARTHUR J. TARNOW**

           **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:**  Plaintiff's Motion for Summary Judgment (docket no. 7) should be DENIED, that of Defendant (docket no. 9) DENIED, and the case remanded for further consideration as set forth herein.

***

   Plaintiff filed an application for disability and Disability Insurance Benefits on June 30, 2004, alleging that she had been disabled and unable to work since June 30, 2004 as a result of rheumatoid arthritis, degenerative arthrosis of the knees, status post bilateral total knee replacement and history of asthma. (TR 16-18, 46-48). The Social Security Administration denied benefits. (TR 36-40). A requested *de novo* hearing was held on June 13, 2006 before Administrative Law Judge (ALJ) Daniel G. Berk. (TR 26, 269).

   The ALJ subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time through the date of the ALJ's October 25, 2006 decision. (TR 26). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 5-7). The parties filed

Motions for Summary Judgment. The issue Plaintiff raises for review is whether the ALJ's decision is supported by substantial evidence on the record.

Plaintiff was 48 years old at the time of the administrative hearing and had an associate's degree in childcare technology. (TR 275-76). Plaintiff took classes towards a bachelor's degree, but stopped attending due to her health. (TR 276). Plaintiff is married and has one dependent child. (TR 276). Plaintiff has past work experience as a benefit representative at a casino and in human resources at a hospital. (TR 277-78). Plaintiff testified that she resigned from the casino job due to stress "and other factors of the job" claiming that they "didn't have enough help" and it was causing her "a lot of problems." (TR 278). Plaintiff applied for and received a full 26 weeks of unemployment compensation after her job at the casino ended in October 2003. (TR 277-78). Plaintiff testified that when she was receiving unemployment benefits she called in to the MARVIN system and responded that she was able and available for work. (TR 280). Plaintiff testified that she was looking for a receptionist position that would not require a lot of typing or getting up and down because she has problems with her knees and her hands swell from typing. (TR 290). Plaintiff testified that she would have attempted to work at such a job up until she had surgery on her left knee in April 2006. (TR 281).

Plaintiff testified that she has been in a lot of pain for about ten years and she still got up in the morning and tried to go to work anyway. (TR 282). She testified that she would get up at 5:00 a.m. to be to work at 8:30 a.m., "just to . . . have a job." (TR 282). She reported that the rheumatoid arthritis "started taking over" all her joints and she has "an enormous amount of swelling" in her hands, knees, and ankles. (TR 61, 283). She reports that she can no longer exercise because her knee swells, hurts and locks up. (TR 64). She testified that when she applied for social security

benefits the agency sent her to a doctor who focused only on her hands and did not look at her knees. (TR 283). Plaintiff testified that for years she has tried to work and do things around her house, but her condition has progressed to the point where it is "really difficult" for her to do "anything, even twist a top off a bottle," and she needs assistance with "everything." (TR 61, 62, 284). In July 2005 Plaintiff reported that she picks things up around the house if her hands are not too stiff. (TR 61). She can do her laundry, dust and sometimes wash dishes, but reports that these tasks take her all day to complete and she still needs assistance from her son because, for example, she cannot pick up a laundry basket. (TR 63). She had to stop assisting her mother with light housekeeping because her hands hurt too much. (TR 61).

Plaintiff is able to engage in some self-care tasks, like washing her body and brushing her teeth, but sometimes her hands are too stiff to fasten her clothing and it hurts her hands to wash or blow dry her hair. (TR 62). She testified that her medications make her sleepy and her asthma and the medication she takes affect her immune system during the winter. (TR 284).

### *Medical Evidence*

Records from September 12, 2001 show that Plaintiff has degenerative arthritis (osteoarthritis) of the left knee, had been a patient in orthopaedics at Henry Ford Medical Center since January 1995 and received periodic Kenalog injections. (TR 115-16). Plaintiff underwent an arthroscopy of the left knee on December 6, 2001 with Craig D. Silverton, D.O. (TR 119). Following the arthroscopy Plaintiff was referred to physical therapy to improve range of motion, quad strengthening and modalities. (TR 137-38). In April 2002 Plaintiff was on leave of absence from her job at MGM Casino due to a swollen and painful right knee with accompanying limp. (TR 142). On April 30, 2002 Plaintiff's treatment provider at Henry Ford Medical Center stated that

Plaintiff could return to work but could not perform repetitive squatting, bending, lifting or walking for six months. (TR 145). On May 2, 2002 she was further restricted to limiting excessive "up and down" from a sitting position and must use an elevator instead of the stairs. (TR 146). In October 2002 the squatting, bending and lifting restriction was renewed for an additional six months. (TR 147).

On February 10 and April 22, 2003 Plaintiff underwent aspiration of both knees and Kenalog injections. (TR 100). April 21, 2003 x-rays reveal advanced narrowing of the medial articular space of each knee with progression since 2001. (TR 107). John Lyon, M.D. examined Plaintiff on May 16, 2003 and noted that Plaintiff walked with a nonatalgic gait, although there was "some left knee component to her gait." (TR 98). Range of motion in the left knee was 5-150 and range of motion in the right was 0-120. (TR 98). Plaintiff reported that she was able to walk ½ to 1 block without significant pain. (TR 98). Dr. Lyon noted that Plaintiff had end-stage osteoarthrosis of the left knee, she had "failed most, if not all, modalities of conservative treatment," she was not a candidate for spacer/unicompartmental knee replacement and they discussed the option of a total knee replacement. (TR 99). On September 10, 2003 Plaintiff reported swelling of the left elbow. (TR 96). Michael Litman, M.D. diagnosed olecranon bursitis which may resolve with time. Otherwise, Plaintiff would need to "see rheumatology for drainage and cortisone injection." (TR 96). Plaintiff was taking Celebrex and Colchicine. (TR 96).

Plaintiff received a series of three Synvisc injections into her left knee between September 29, 2003 and October 7, 2003. (TR 92-94). October 7, 2003 x-rays of Plaintiff's left elbow showed intraarticular loose body and no soft tissue calcification. (TR 92). They also showed "distension of the anterior and posterior fat pads of the elbow suggesting fluid within the joint." (TR 106).

Plaintiff lacked 20 degrees of full extension in the left elbow and Raimonds A. Zvirbulis, M.D., referred her for occupational therapy to assist with the range of motion in the left elbow. (TR 92). Plaintiff was discharged from therapy on November 11, 2003. (TR 88). Plaintiff reported functional improvements and less frequent, less severe pain. (TR 88). The therapist reported that Plaintiff's range of motion had increased slightly, her function had increased based on Plaintiff's own report (the therapist noted no improvement in the time to complete the nine-hole peg test) and Plaintiff had decreased grip strength on the left, decreased lateral pinch strength and decreased three-jaw pinch strength. (TR 88). The therapist discharged Plaintiff and concluded that she had plateaued. (TR 89). The therapist noted that "[n]o further changes are expected within a reasonable period of time." (TR 89).

On November 19, 2003 Dr. Zvirbulis performed aspiration of Plaintiff's right knee to remove 10 cc of serous fluid and inject 1 cc of Kenalog. (TR 87). In December 2003 Plaintiff reported to the emergency room twice due to asthma exacerbations. (TR 82-85). Plaintiff reports having only mild problems with her asthma and using her albuterol inhaler once every three months at the most. (TR 85). On December 30, 2003 Plaintiff reported pain, swelling and tenderness to the right wrist and hand with onset the prior night. (TR 80). Ashok Gupta, M.D. noted that Plaintiff had a marked degree of puffiness and tenderness over the right wrist in the area of the radial styloid. Dr. Gupta also noted puffiness, swelling and tenderness to the second and third metacarpophalangeal joints. (TR 80). Side-to-side motion was painful and flexion and extension were "extremely painful and limited." (TR 80). It was noted that Plaintiff would discontinue use of Celebrex because it was "not helping," start Indocin 50 mg and take Colchicine 0.6 mg one tablet twice per day. (TR 81). A December 30, 2003 x-ray of the right wrist and hand showed findings compatible with rheumatoid

arthritis including marginal erosions at the MCP joints, few erosions affecting the carpals and narrowing of the radial carpal joint space and degenerative changes of the IP joint of the thumb. (TR 105). In February 2004 Donard Haggins, M.D., rheumatologist, referred Plaintiff to physical therapy to address range of motion and muscle strength and tone for her left elbow. (TR 174-75).

On August 30, 2004 Plaintiff underwent a state agency medical examination with Anjum Sadiq, M.D., physiatrist. (TR 108). Dr. Sadiq noted that Plaintiff could pick up a pencil, coin, button a shirt, tie her shoes and make a fist. (TR 109). Her grip strength was 5/5 bilaterally. (TR 109). Examination of the MCP joint revealed some tingling in the first, second and third joint on the right and first and second on the left with tenderness. (TR 109). Plaintiff was not able to perform heel, toe and tandem walking or squatting due to pain in the lower extremity. (TR 109). Plaintiff did not use a walking aid and was able to "dress, undress, and get on and off the table without difficulty." (TR 109). Dr. Sadiq diagnosed known rheumatoid and osteoarthritis, "now presenting with chronic pain in the left elbow, both hands, both hips, both knees and right ankle," and a history of asthma. (TR 110).

On November 10, 2004 Dr. Zvirbulis provided a letter "to whom it may concern" stating that Plaintiff is under his care for osteoarthrosis of both knees, Plaintiff has periodic effusions and aspirations and injections of both knees. (TR 149). She also has a diagnosis of rheumatoid arthritis and gets "musculoskeletal pain and discomfort at any time." (TR 149). In January 2005 Dr. Zvirbulis referred Plaintiff for physical therapy to again address quad strength, range of motion and modalities. (TR 150).

On April 6, 2006 Plaintiff underwent a total left knee replacement. (TR 154-64). Plaintiff was discharged with Docusate CAP, Enoxaparin injections, Ferrous Sulfate tablets and Vicodin

tablets. (TR 154-55). In an April 27, 2006 Rehabilitation Services report, the treatment provider noted that Plaintiff had an antalgic gait with difficulty ambulating up and down stairs and compensatory movements for sit-to-stand transfers. (TR 161). Plaintiff had active range of motion of the left knee of -10 to 65 degrees and knee flexion contraction on the right secondary to arthritic changes. (TR 161). Plaintiff was unable to perform a single leg heel raise. (TR 161). It was noted that Plaintiff had "fair rehabilitation potential." (TR 161). On May 30, 2006 Plaintiff reported "significant improvement in ambulatory capacity on level surfaces, uneven surfaces, and stairs." (TR 163). Plaintiff's range of motion was improved and strength throughout the lower left extremity had increased but Plaintiff still had mild extensor lag in the left quadriceps and weakness in the left vastus medialis oblique. (TR 163). The right knee was noted as a "limiting factor as opposed to the new postoperative/surgical left knee." (TR 163). The record contains physical therapy notes from April 27, 2006 to June 6, 2006. (TR 165-70).

On May 26, 2006 Dr. Haggins wrote a letter "to whom it may concern" indicating that Dr. Haggins had treated Plaintiff for several years under a diagnosis of rheumatoid arthritis and she was currently being treated with Enbrel 50 mg subQ once a week, methotrexate 7.5 mg once a week and folic acid 1 mg per day. (TR 174). Dr. Higgins stated that as a result, Plaintiff's pain was reduced, however, she still had significant pain and discomfort in multiple joints. (TR 174).

A September 24, 2004 Physical Residual Functional Capacity Assessment concluded that Plaintiff had the ability to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday and sit for about six hours in an eight hour workday. (TR 72). She has unlimited ability to push and/or pull, other than as restricted by her lifting limitations. (TR 72). She has decreased range of motion in some digits and

mild decreased range of motion in both knees.  (TR 73).  Occasional postural limitations were noted and no manipulative limitations were found.  (TR 73-74).  The ALJ did not take testimony from the vocational expert who was present at the hearing.  (TR 271).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION:**

The ALJ found that although Plaintiff was insured for benefits through March 31, 2009, had not engaged in substantial gainful activity since June 30, 2004, and suffered from rheumatoid arthritis, a history of degenerative arthrosis of the knees, status post bilateral total knee replacement and a history of asthma, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments.  (TR 25).  Additionally, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible.  (TR 21).  The ALJ found that Plaintiff was not capable of performing her past relevant work.  (TR 24).  However, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of sedentary work and that there were a significant number of jobs in the economy which she could perform.  (TR 24).  The ALJ relied on the Medical-Vocational Guidelines to determine that  Plaintiff was not suffering from a disability under the Social Security Act.  (TR 24-25).

**STANDARD OF REVIEW:**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## DISCUSSION AND ANALYSIS:

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past work,

the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the medical records show that Plaintiff's medical condition meets or equals the requirements of the Listing of Impairments, the ALJ failed to properly assess Plaintiff's complaints of pain, limitations and credibility, the ALJ failed to fully develop the medical record and the ALJ failed to obtain testimony from a vocational expert. (Docket no. 7).

### *Whether Plaintiff's Condition Met or Equaled a Listed Impairment*

Plaintiff argues that the medical condition of her knees meets Listing 14.09 for inflammatory arthritis. (Docket no. 7). In order to establish disability under the Listings, each requirement of the applicable Listing must be met. *See* 20 C.F.R. § 404.1525(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). If any one

requirement is not satisfied, the ALJ must move beyond the Listings and determine whether the claimant can perform either his past work or other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v); *see also Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001). The claimant bears the burden of demonstrating that her impairment meets or equals a listed impairment. *Id.*

Plaintiff asserts that she meets the requirements of Listing 14.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §14.09. Listing 14.09 requires that the condition be documented as described in 14.00B6, which includes an array of disorders widely classified as inflammatory arthritis, including Plaintiff's rheumatoid arthritis. Listing 14.09 also requires the claimant to meet one of five additional requirements, one of which is the following:

> A. History of joint pain, swelling, and tenderness, and signs on current physical examination of joint inflammation or deformity in two or more major joints resulting in inability to ambulate effectively or inability to perform fine and gross movements effectively, as defined in 14.00B6b and 1.00B2b and B2c; or

Plaintiff does not allege that she meets any of the additional criteria and did not identify objective evidence in the record regarding an inability to ambulate effectively or perform fine and gross movements as defined in Listing 1.00B2b(1) and 1.00B2b(2). The ALJ's determination that Plaintiff did not meet a Listing is supported by substantial evidence. As set forth below, however, Plaintiff provides subjective evidence that her ability to perform fine and gross movements is impaired and the Court should remand this case for further findings with respect to Plaintiff's credibility, including her assertions that her hands swell, including when she types, and that she has difficulty manipulating items, including opening bottles and jars and dressing herself.

***Whether the ALJ Failed to Properly Assess Plaintiff's Credibility With Respect To Pain, Limitations and Disability***

Plaintiff argues that the ALJ did not properly assess her complaints of pain and the extent of her symptoms. The ALJ found that although "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms," her subjective complaints regarding her symptoms and limitations were not fully credible. (TR 21). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. §

404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that although Plaintiff had a history of arthrosis of the knees, clinical examinations did not indicate functional limitations precluding Plaintiff from all work for any 12 month period. (TR 21). The ALJ pointed out that a May 2003 examination showed that Plaintiff walked with a non-antalgic gait and in August 2004 she neither used nor needed a walking aid. (TR 21). The ALJ further noted that at the May 2003 examination, Plaintiff's range of motion was mildly limited at the extreme, but there was no evidence of erythema or drainage. (TR 21). Although there was crepitus, there was no patellofemoral pain. (TR 21). The ALJ pointed out that the August 2004 evaluation showed crepitation and decreased range of motion, but coordination was intact. (TR 21). The ALJ stated that prior to the knee replacement in April 2006, Plaintiff "had received essentially routine and/or conservative treatment for pain, not the type of medical treatment one would expect for a disabled individual." (TR 21). The Court notes that this statement is contradicted by Dr. Lyon's 2003 statement that Plaintiff had "failed most, if not all, modalities of conservative treatment." (TR 99). The ALJ noted that Plaintiff's treatment "consisted of occasional aspiration, Kenalog injections, and Synvisc injections." (TR 21). The ALJ noted that in February 2003 Plaintiff reported relief of symptoms with aspiration of the knee. (TR 22).

The ALJ also determined that there was a credibility issue because Plaintiff applied for and received unemployment compensation benefits and testified that she certified through Michigan's Automated Response Voice Interactive Network (MARVIN) that she was able and available to work during the period when she received benefits. (TR 21, 279-80). The ALJ noted that while this was not dispositive, it was inconsistent with Plaintiff's assertion of disability. (TR 21). The ALJ relied

on *Jernigan v. Sullivan* for the premise that "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." *See Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). Unlike *Jernigan*, where claimant completed an application for unemployment compensation benefits *at the time* he alleged his disability, Plaintiff received unemployment compensation benefits from October 2003 through approximately May 2004. Plaintiff's application and disability onset date is June 30, 2004, after the unemployment benefits concluded. (TR 25, 251). Contrary to the ALJ's assertion, Plaintiff's receipt of disability benefits prior to the onset date of disability is not inconsistent with her assertion of disability. Courts have held that the "mere receipt of unemployment insurance benefits does not prove ability to work." *See Kinsella v. Schwieker*, 708 F.2d 1058, 1066 (6th Cir. 1983) ("in the context of all the evidence, it was unreasonable to infer that the application for such benefits diminished the credibility of [claimant's] complaints of pain.") .

The ALJ pointed out that there was little documentation of treatment for Plaintiff's knees from the alleged onset date of June 30, 2004 through the April 2006 knee replacement. (TR 22). The ALJ noted correspondence from Dr. Zvirbulis dated November 10, 2004 and stated that the "record does not contain further evaluation or treatment of the knees until April 2006." (TR 19). In his credibility determination, the ALJ points out that "the medical record documents little, if any, treatment for the claimant's knees from the alleged onset date through the date of her knee replacement surgery." This finding relates to Plaintiff's argument that the ALJ failed to develop the record and failed obtain records from Henry Ford Hospital for the time period from February 12, 2004 to October 26, 2006. (Pl's Br at 9). While 42 U.S.C. § 423(d)(5)(B) provides that the Commissioner of Social Security shall consider all evidence available, it provides that the

14

Commissioner will develop a complete medical history "for at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." There is no allegation that medical evidence was not properly obtained for this time period.

Regarding the issue of the medical records from November 2004 through April 2006, which were submitted to the Appeals Council, the "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster*, 279 F.3d at 357. This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d

at 712).  Although Plaintiff asks the Court for a remand to consider the Henry Ford Medical Center records, Plaintiff provided no justification, reasonable or otherwise, for the failure to acquire and present this evidence to the ALJ for the administrative hearing[1].  The documents at issue were created prior to the ALJ's decision.  The evidence was therefore not new and Plaintiff has not shown "good cause" for failing to provide these documents earlier.  *See Oliver v. Sec'y of Health & Human Srvs.*, 804 F.2d 964, 966 (6th Cir. 1986).  The Court cannot remand this case pursuant to sentence six for consideration of the medical records which were presented to the Appeals Council and not the ALJ.

"'[W]here the claimant is unrepresented by counsel, the ALJ has a duty to exercise a heightened level of care and assume a more active role' in the proceedings."  *Lashley v. Sec'y Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983).  Although the ALJ clearly advised Plaintiff of her right to counsel at the hearing, the ALJ failed to develop the record at the hearing with respect to what the ALJ found was a lack of treatment for nearly a year and a half prior to Plaintiff's knee replacement surgery.   (TR 273)**.**  The ALJ did not inquire at the hearing regarding the "gap" in medical treatment, despite Plaintiff's testimony that she was "still seeing" Dr. Haggins for the rheumatoid arthritis in her hands, elbow and ankle.  (TR 281).  An inquiry by the ALJ regarding the gap in treatment records may have revealed ongoing treatment during this time and the need to obtain the medical records.

At the hearing, the ALJ made no further inquiry regarding Plaintiff's activities of daily

---

[1]At the conclusion of the hearing, the ALJ asked whether Plaintiff had any additional evidence to submit by way of testimony or documentation and Plaintiff stated no.  (TR 284).  It is not clear whether Plaintiff knew the Henry Ford records for the time in question were not included in the documents.

living. Plaintiff testified that she has an enormous amount of swelling in her hands, knees and ankles and stated in her closing summary that she has difficulty twisting the top off a bottle and it is as if she needs "assistance with everything." (TR 283-84). Plaintiff further testified that she would need a job which did not require a lot of typing due to the swelling in her hands or getting up and down because of the problems with her knees. (TR 280).

The ALJ did not address the credibility of Plaintiff's testimony that her hands swell when she types and other limitations in her ability to complete activities of daily living. In his decision the ALJ cited a July 15, 2005 function report to support his credibility finding and noted that Plaintiff cares for birds, fish and a rabbit and helps care for her husband and son. The ALJ also noted the Plaintiff "described some difficulty performing personal care, but she noted that she does not need special help or reminders taking care of personal needs and grooming," and cited household tasks Plaintiff is able to perform. (TR 23). In the same function report Plaintiff reported that she cares for the animals with the help of her husband and son, reported that as she performs the household tasks she rests her hands and knees between tasks and it takes her all day to complete the tasks, stopping if she needs to stop, and that she no longer assists her mother with light housekeeping, due to the pain in her hands. (TR 61). Plaintiff also reported difficulty with personal care. Sometimes her hands are too stiff to be able to dress herself including fastening her bra, pulling on pants, underpants and stockings, or curling her hair. (TR 62). She reported that she cannot wash or blow dry her hair because it hurts her hand. (TR 62). Although Plaintiff prepares meals, she also reported needing assistance with opening "anything" and that she and her family eat out if she is not feeling well. (TR 62). She reported driving, but she has to wait until her medicine takes effect or she cannot drive because it is difficult to change gears and turn the steering wheel.

(TR 63). These reports of daily activities are not inconsistent with the pain and limitations to which she testified. The ALJ did not address these limitations when he considered Plaintiff's activities of daily living. The ALJ's credibility determination is not supported by substantial evidence for the reasons set forth above.

A district court may enter a judgment reversing findings of the Commissioner and remand for a hearing under 42 U.S.C. § 405(g). "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision must therefore be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher v. Sec'y of Health & Human Srvs.*, 17 F.3d 171, 175-76 (6th Cir. 1994). All "essential factual issues" have not been resolved in this case and therefore a remand to award benefits would be inappropriate. *Faucher*, 17 F.3d at 176; *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994). The ALJ must provide specific reasons explaining why Plaintiff's statements of pain and other symptoms were found not to be fully credible. The ALJ must make these factual determinations in the first instance. The Court may only review the ALJ's determinations based upon the reasons articulated by the ALJ. *See Brainard*, 889 F.2d at 681. The appropriate procedure upon remand is for the Commissioner to conduct further proceedings consistent with this Report. Therefore, upon remand, the ALJ must re-evaluate Plaintiff's credibility, citing to which of Plaintiff's claims are or are not credited and to the evidentiary basis for his or her conclusions

### *Whether the ALJ Erred in Failing to Obtain Vocational Expert Testimony With Respect to Plaintiff's Non-Exertional Limitations*

Finally, Plaintiff argues that the ALJ erred in relying on solely on the medical-vocational guidelines, otherwise known as the "grid" in determining that Plaintiff is not disabled. The

Commissioner can meet his burden at step five of his analysis by referring to the Grid, 20 C.F.R. Pt. 404, Subpt. P, App. 2, which dictates a finding of "disabled" or "not disabled" based on the claimant's exertional restrictions, age, education, and prior work experience. *See Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). But if a claimant has both exertional and nonexertional impairments, the Commissioner is not permitted to rely on the Grid alone to determine whether a disability exists. *See id.* at 1173-74; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e). If a claimant's non-exertional limitations prevent the claimant from doing the full range of work at the designated level, then the Commissioner must come forward with some reliable evidence showing that there remain a significant number of jobs that the claimant can perform, taking into account the claimant's exertional and non-exertional limitations. *See Shelman v. Heckler*, 821 F.2d 316, 321-22 (6th Cir. 1987). Non-exertional impairments are defined as "certain mental, sensory, or skin impairments" or "impairments [which] result solely in postural and manipulative limitations or environmental restrictions." 20 C.F.R. Part 404, Subpt. P, App. 2, Section 200.00(e).

The ALJ found that Plaintiff had the RFC to sit 6 of 8 hours and stand or walk 2 of 8 hours in a typical work day and lift and/or carry as much as 10 pounds occasionally and lesser weights frequently and concluded that Plaintiff was able to perform a full range of sedentary work[2]. (TR 25). At step five of the sequential analysis, the ALJ subsequently applied Rules 201.18, 201.21 and 201.22 of the Grids, 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, to

---

[2] Sedentary work is defined as that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

conclude that Plaintiff was not disabled during the relevant time period based upon his factual findings that: (1) Plaintiff had the RFC to perform a full range of sedentary work; (2) Plaintiff's age category was "younger individual" (between the age of 45 and 49); and (3) Plaintiff had at least a high school education and is able to communicate in English. (Tr. 25). Although the ALJ stated that Plaintiff is able to perform the full range of sedentary work, his RFC provides a non-exertional limitation limiting her to standing and/or walking for two hours in an eight-hour work day. Jobs are still considered sedentary if walking and standing are required occasionally, no more than about 2 hours of an eight hour work day, providing that the other sedentary criteria are met. *See* SSR 96-9P, 1996 WL 374185 *3. The two-hour limitation with respect to sedentary work does not preclude use of the Grid.

The case will be remanded for consideration of Plaintiffs credibility and subjective complaints. Upon remand, if the ALJ were to determine that Plaintiff had any non-exertional limitations based upon her subjective complaints, including those relating to Plaintiff's allegations that her hands swell when she types and her other allegations of a limited ability to manipulate items, the ALJ would need to re-evaluate whether the strict application of the Grid was appropriate. Therefore, upon remand, the ALJ must re-evaluate Plaintiff's credibility, citing to which of Plaintiff's claims are or are not credited and to the evidentiary basis for his or her conclusions.

## <u>CONCLUSION</u>

The ALJ's decision is not supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (docket no. 7) should be denied, that of Defendant (docket no. 9) denied and the case remanded.

**REVIEW OF REPORT AND RECOMMENDATION:**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: October 06, 2008          s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: October 06, 2008          s/ Lisa C. Bartlett
                                       Courtroom Deputy